UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LARRY JACOBSON, as Chairman of the
Joint Board of the Electrical Industry,

                      Plaintiff,

                - v -

EMPIRE ELECTRICAL CONTRACTORS,
INC. and JOHN ESPOSITO,

                      Defendants.
-----------------------------------------------------------x

**REPORT AND RECOMMENDATION**

CV-05-1713 (DLI)(VVP)

      This matter was referred by the Honorable Dora L. Irizzary to the undersigned to issue a report and recommendation on the amount of damages, including unpaid contributions, delinquency charges, interest, and costs to be awarded to the plaintiff Larry Jacobson, as Chairman of the Joint Board of the Electrical Industry (hereinafter "the Joint Board ") as against the defaulting defendants, Empire Electrical Contractors, Inc., (hereinafter "Empire"), and John Esposito (hereinafter "Esposito").  The Joint Board is the administrator of various employee benefit plans maintained pursuant to a multiemployer collective bargaining agreement ("CBA") with Local Union No. 3 ("the Union") by which the defendant Empire has agreed to be bound. *See* Amended Complaint ¶¶ 4-8, 12.  The case involves the defendants' alleged violations of the Employee Retirement Income Security Act ("ERISA") by their failure to pay contributions to the Joint Board  as required by the terms of the CBA.  *Id.* ¶¶ 13-15,18-20, 25.  The plaintiff seeks to recover the delinquent contributions plus interest and liquidated damages under ERISA.  The plaintiff also requests that the court award attorney's fees and costs.

A.  **LIABILITY**

By virtue of the defendants' defaults, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The Joint Board is the administrator and fiduciary of various employee benefit plans, including the Deferred Salary Fund, which is commonly known as a 401(k) Plan. *See* Amended Complaint ¶ 5. The court is required to accept as true that Empire was obligated, under the CBA with Local 3, to pay fringe employee benefit contributions to the plans for all work performed by those employees of Empire within the trade and geographical jurisdiction of the union. *Id.* ¶¶ 10-13, 22-25. Empire's obligations under the CBA are enforceable under ERISA, *see* 29 U.S.C. § 1132(a)(3), and the Labor Management Relations Act ("LMRA"). *See* 29 U.S.C. § 185. The court further accepts as fact the allegation that Empire owes delinquent contributions to the plaintiffs for the time period September 28, 2005 through November 9, 2005. *Id.* ¶ 18. The court is also required to accept as true that Empire was required by the CBA to submit salary deferral contributions to the 401(k) Plan, and failed to do so for the period of September 14, 2005 through November 9, 2005. *Id.* ¶¶ 5-7, 13, 19-20, 27-28.

These facts are sufficient to establish the defendant Empire's liability for violations of ERISA which states, "every employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall. . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." *See* 29 U.S.C. § 1145.

While these facts are sufficient to establish the defendant Empire's liability, they are not sufficient to establish the defendant Esposito's liability. The Second Circuit, applying New York law, has held that when examining individual liability under ERISA and the LMRA, there must be "clear and explicit evidence of [an individual] defendant's intent to add personal liability to the liability of the entity." *Mason Tenders District Council Welfare Fund v. Thomsen Construction Co.,* 301 F.3d 50, 53 (2d Cir.2002) (internal quotations and citations omitted). Further, New York courts rarely find individual liability, "since there must be overwhelming evidence of the signatory's intention to assume personal liability." *Id*. In determining an individual's intent to assume personal liability, the factors to be considered include "the contract's length, the location of the liability provision relative to the signature line, the presence of the name of the signatory in the contract itself, 'the nature of the negotiations leading to the contract,' and the signatory's role in the corporation." *Id.* at 53, *quoting Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Services Fund and Annuity Fund v. Lollo*, 35 F.3d 29, 35 (2nd Cir. 1994).

The plaintiff alleges only that Esposito is a principal of Empire, and that under the CBA principals of any employer must guarantee payment of contributions to the Joint Board. *See* Amended Complaint ¶¶ 11, 35. The plaintiff points to no provision of the CBA, however, that supports the latter proposition. Thus, the allegation merely states a legal conclusion, not a fact, which the court is not required to accept without some factual support. In any event, the allegation is insufficient because it merely state that the principal "must guarantee" payment of contributions. The allegation does not assert that Esposito actually did execute some form of guaranty or otherwise indicate he intended to assume personal liability for those payments. *See*

*id*. ¶ 35. Absent specific allegations as to Esposito's conduct which establish that he in some way assumed personal liability, the court cannot recommend that Esposito be held liable. *See Mason Tenders,* 301 F. 3d at 54 (holding that even the presence of a personal liability clause in a signed agreement, without more, is insufficient).[1] Therefore, damages and other relief should only be assessed as against the corporate defendant Empire.

**B.     DAMAGES**

ERISA provides a right of action for recovery of

(A)     the unpaid contributions
(B)     interest on the unpaid contributions
(C)     an amount equal to the greater of –
          (i) interest on the unpaid contributions, or
          (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State Law) of the amount determined by the court under subparagraph (A).
(D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E)      such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Having provided notice to the defaulting defendants, the court may rely on affidavits and other supporting documents in lieu of holding an evidentiary hearing on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,*

---

[1] In *Mason Tenders*, the court found no individual liability even though the collective bargaining agreement contained a personal liability clause. The court focused on the fact that the signatory of that agreement on behalf of the employer signed only in his official capacity as president. Here, Esposito similarly signed only in his official capacity as president. Since the agreement he signed contains no personal liability clause, the case for personal liability is even more attenuated here than in *Mason Tenders*.

873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). There being no objection by any party to that procedure, the court has received and considered the plaintiff's submissions, and concludes that they provide a basis for the damages recommended below. The defendants have made no submissions as to damages.

### 1. *Unpaid ERISA Contributions*

Federal Rule 55(b) requires the court to make an independent assessment of damages when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management Dyn., Inc.,* 515 F.2d 801, 814 (2d Cir. 1975). In support of the request for delinquent contributions, the only statement under oath provided by the plaintiff is a declaration submitted by the attorney of record. *See* Supplemental Declaration of Molly A. Brooks ("Brooks Decl."). Annexed to the Brooks Declaration is a series of documents that purport to establish that $130,691.17 in delinquent ERISA contributions are owed. *Id.* Exh. A-L. The plaintiff has not provided an affidavit from an individual with actual knowledge to authenticate the supporting documents or otherwise confirm the contribution amounts which are outstanding. Nevertheless, although sparse, the submissions annexed to the Brooks Declaration provide the court with enough support to recommend an award of at least some of the damages sought by the plaintiff.

Empire submitted payroll reports electronically for the weeks September 28, 2005 through December 14, 2005. *See* Brooks Decl. ¶ 26. The plaintiff provided the court with a computer printout containing what is asserted to be the electronic payroll reports filed by the defendant for the weeks of September 28, 2005 through December 14, 2005. *Id.,* Exh. E.[2]

---

[2]In the future the plaintiff would be wise not to rely on an attorney's affirmation to authenticate its business records or to assert the amounts that are unpaid and therefore still due to the plaintiff because the attorney is not a competent witness on those matters. Rather, the bookkeeper or other custodian of records who is competent to testify about the authenticity and reliability of the records is the appropriate

Standing alone, without proper authentication and explanation, the court cannot assess the reliability of the computer printouts. However other documents submitted by the plaintiff, independent of the payroll reports corroborate the reports in part and give the court a basis to upon which to verify the figures contained in the payroll reports.

A letter dated January 23, 2006 sent by plaintiff's in-house counsel to the defendant, which was faxed to defendant Esposito's attention, mirrors the outstanding contributions that are documented by the payroll reports. *See* Brooks Decl., Exh. C. In addition, on four separate occasions the defendant Empire provided checks to the Joint Board in an attempt to pay weekly amounts past due.[3] All of the checks submitted by Empire were returned by the bank for insufficient funds. *Id.*, Exh. F. The defendant submitted a check on November 22, 2005 to pay $14,045.20 for delinquent ERISA contributions due for the week ending September 28, 2005. *Id.* ¶ 27, Exh. F. This $14,045.20 figure is consistent with the amounts listed as owed for September 28, 2005 in the electronically generated payroll reports. *See id.* Exh. E. Likewise, the other three attempted payments by Empire all correspond with plaintiff's records reflecting the contribution amounts due for the given period. These attempted payments total $46,650.38 of the contributions. Brooks Decl., Exh. F. Hence, these submissions are sufficient to substantiate that unpaid contributions, as stated in the payroll reports, of $130,691.17 are due for the period of September 28, 2005 through December 14, 2005.

---

affiant for such matters. It is only by the barest of margins that the court has found that the checks submitted by the defendant are sufficient to satisfy the court as to the reliability of the documents proffered by the plaintiff in support of the claim for damages for unpaid contributions to the various employee benefit plans.

[3]Checks in the following amounts were provided: $14,045.20 for the week ending September 28, 2005; $8,578.92 for the week ending November 9, 2005; $10,829.49 for the week ending for the week ending October 12, 2005; and $13,196.77 for the week ending October 5, 2005.

### *2. Unpaid 401(k) Contributions*

The plaintiff is also seeking unpaid 401(k) contributions. Empire was required by terms of the CBA to deduct a specified percentage of each covered employees wages and remit such contributions to the 401(k) plan. *See* Brooks Decl. ¶ 16. In addition, the employer was to make separate contributions on behalf of covered employees. *See id.* Any 401(k) contributions were to be sent by the defendant to Putnam Investments, a third-party investment manager. *Id.* According to the plaintiff's attorney, the defendant failed to submit any reports to Putnam Investments for the period of September 28, 2005 through December 14, 2005, *id.*. ¶ 41-42, and the plaintiffs are therefore seeking amounts for these weeks based upon the amount in the last report submitted by Empire, which was for the week ending September 21, 2005. *Id.* ¶ 44. The only evidence submitted by the plaintiff to substantiate that amount, however, is a one-page computer printout purportedly from the plaintiff's records. *Id.,* Exh. K. The printout is neither authenticated nor explained, however, by a competent witness. Unlike the records submitted in support of the other unpaid contributions, the information in this record is not corroborated by other information like the checks submitted by the defendant that were returned for insufficient funds. The plaintiff simply has not submitted adequately authenticated evidence upon which the court may rely to make the required independent assessment of this aspect of the plaintiff's damages.[4]

---

[4]The court has no reason to doubt the veracity or accuracy of the statements made by the plaintiff's attorney. Nevertheless, an attorney's affirmation would be insufficient to establish the facts upon which the court is asked to rely if this were a motion for summary judgment. The court finds no reason to adopt a more relaxed standard for the proof of facts in the context of a motion for a default judgment, particularly where competent witnesses to establish the facts are so readily at hand for the plaintiff.

### 3. 401(k) Lost Investment Income

In addition, the plaintiff seeks $902.93 for lost investment income, i.e. lost interest, because of the late payment of various 401(k) plan contributions for various weeks in 2005. In support of this request, the plaintiff has provided a letter dated April 13, 2006 from the Joint Board to the defendant which attaches a chart representing weeks when the defendants were not timely in making contributions and the interest charged based upon the late payments. *Id.* ¶ 46, Exh. L. Again, however, this record is not adequately authenticated or explained and thus does not give the court a sufficient basis to determine that payments were in fact delinquent, and if so, the amount of interest to be paid to compensate for the lateness.

Accordingly, the court recommends that an award of damages be made against the defendant Empire in the amount of $130,691.17 in unpaid ERISA contributions, and that no award be made for delinquent 401(k) contributions and lost investment income.

## C.    INTEREST

ERISA provides for the award of interest on delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). Interest is determined "by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *Carney v. Prompt Maintenance Services, Inc.*, 2002 WL 122934, at *6 (S.D.N.Y. Jan. 30, 2002). The plaintiff has provided the court with a printout from the Department of Labor's website which list the applicable interest rates. *See* Brooks Decl. ¶ 50, Exh. M. The plaintiff has also submitted for the court's review two exhibits which calculate the interest due on the unpaid contributions based on the corresponding rates. *Id.* ¶¶ 51-53, Exh. D. As to the unpaid contributions to benefit funds, the interest thus calculated appears to be accurate and totals $9,667.43. As to the unpaid 401(k) contributions, however,

since no award of damages is recommended above, no interest should be awarded. Accordingly, the defendant Empire should be required to pay $9,667.43 for interest through November 28, 2006. *Id.* ¶ 51, Exh. D.

**D.     LIQUIDATED DAMAGES**

In addition to interest on the unpaid contributions, under the terms of the CBA and ERISA, the plaintiffs are entitled to liquidated damages in the amount of the interest owed, or 20% of the unpaid contributions. *See* Brooks Decl. ¶ 54, Exh. B; 29 U.S.C. § 1132(g)(2). Thus, calculating liquidated damages in an amount equal to 20% of the unpaid contributions, the plaintiff is entitled to an additional $26,138.23.

**E.     ATTORNEY'S FEES AND COSTS**

The plaintiffs are also seeking attorney's fees and costs, both of which are available under ERISA. *See* 29 U.S.C. 1132(g)(2)(D). The plaintiff requests $1,101.70 for litigation costs. A prevailing party is entitled to compensation for out-of-pocket expenses that are normally charged to the client. *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d. Cir. 1989). The plaintiff's submissions disclose adequately detailed explanations of various expenses include filing fees, service fees, copying costs, transcripts, and postage fees. Brooks Decl. ¶ 62, Exh N. These types of expenditures are generally compensable, *see, e.g., Levy v. Powell,* No. CV 00-4499, 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005); *Rotella v. Board of Educ. of City of New York*, No. CV-01-0434, 2002 WL 59106, at *1 (E.D.N.Y. Jan. 17, 2002); *Hine v. Mineta*, 253 F.Supp.2d 464, 467 (E.D.N.Y.2003). The court finds the costs claimed here to be reasonable and therefore compensable, with one caveat. The Second Circuit has made clear "that computer research is merely a substitute for an attorney's time that is compensable

under an application for attorney's fees and is not a separately taxable cost." *United States ex. rel Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.,* 95 F.3d 153, 173 (2d Cir. 1996) (citing *Haroco, Inc. v. Am. Nat'l Bank and Trust Co. of Chicago,* 38 F.3d 1429, 1441 (7th Cir. 1996)). That, of course, does not mean that computer research "costs" are not compensable at all, only that they are more appropriately considered and compensated as attorneys' fees. The rationale for this stems from the recognition that

> computerized research is normally matched with a corresponding reduction in the amount of time an attorneys must spend researching. Therefore, there is no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee. In both cases the total costs are attorney's fees and may not be recovered as "costs."

*Haroco*, 38 F. 3d at 1440-41. *Accord Raniola v. Bratton,* No. 96 Civ. 4482, 2003 WL 1907865, at *8 (S.D.N.Y. Apr. 21, 2003) (Dolinger, Mag. J.). Accordingly, the computer research costs at issue will be shifted to and compensated as fees. After deducting the $266.91 associated with computer and search fees from costs, court finds the other costs reasonable, and therefore recommends that the plaintiff be awarded $834.79 for costs.

To aid the court in determining the amount of reasonable attorney's fees, the plaintiff is required to submit evidence that provides a factual basis for a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 433-434 (1983). In this Circuit, that entails submitting contemporaneous billing records documenting the date, the hours expended, and the nature of the work done, for each attorney. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). The court must then determine whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 406 U.S. 886, 896 n.22, 104 S. Ct. 1541 (1984); *Luciano v. Olsten*

*Corp.,* 109 F.3d 111, 115 (2d Cir. 1997). Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See id.*, 711 F.2d at 1148; *Private Sanitation Union Local 813, International Brotherhood of Teamsters v. Gaeta-Serra Associates, Inc.*, Dkt. No. CV 02-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y. August 12, 2005). In addition, the court may exclude hours from the lodestar calculation that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003), *citing Hensley,* 461 U.S. at 434, *Luciano*, 109 F.3d at 116.

In reviewing the submissions on this issue, the court finds that the billing records are sufficiently detailed to permit the court to analyze the reasonableness of the fees charged. The court further finds that the time billed and the rates charged by counsel are appropriate.[5] Accordingly, the court recommends that the plaintiff be awarded $7,211.91, which includes the full amount sought as reimbursement for attorney's fees plus the $266.91 in computer research costs which are compensated as attorney's fees.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that the claims against John Esposito be dismissed and that a default judgment be entered against the defendant Empire Electrical Contractors, Inc., for the following amounts:

1. Unpaid ERISA contributions in the amount of $130,691.17;

2. Interest through November 28, 2006 in the amount of $9,667.43, plus any additional interest calculated to the date of judgment;

---

[5]The partner in charge billed .8 hours at $225/hour, associates billed 19.5 hours at $200/hour and paralegals billed 38.2 hours at $75/hour. The record also reveals that $266.91 was billed for computer research and search fees.

3. Liquidated damages in the amount of $26,138.23; and

4. Attorney's fees totaling $7,211.91, and costs in the amount of $834.79.

\*          \*          \*          \*          \*          \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by regular mail and file proof of such service in the record.**

*Viktor V. Pohorelsky*

Dated: Brooklyn, New York  
       September 13, 2007

VIKTOR V. POHORELSKY  
United States Magistrate Judge